## CITY & SUBURBAN RAILWAY OF WASHINGTON v. COOPER.*

TRIAL; DIRECTION OF VERDICT; STREET RAILWAYS; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE.

1. On a motion by the defendant to direct a verdict in his favor at the close of the plaintiff's evidence, every fact offered in evidence must be accepted as true, together with every reasonable inference deducible therefrom; and the motion can only be granted when but one conclusion therefrom can be reached by all fairminded men, and that conclusion is utterly opposed to the plaintiff's right to recover in the case.

2. Failure by a street railway company to comply with police regulations limiting the speed of street cars on city streets will constitute negligence, if the failure to do so is the proximate cause of an injury, or has a direct and appreciable part in causing it. (Following *Clements* v. *Potomac Electric Power Co.* 26 App. D. C. 482.)

3. Testimony by a nonexpert witness as to the speed of a street railway car is competent, its value being for the determination of the jury. (Following *Eckington & S. H. R. Co.* v. *Hunter,* 6 App. D. C. 287; and *Metropolitan R. Co.* v. *Blick,* 22 App. D. C. 194.)

---

*Street Railways.*—As to operation of street car at speed in excess of that prescribed by ordinance as negligence or evidence of negligence, see presentation of authorities relating to that subject in editorial note to *Ford* v. *Paducah City R. Co.* 8 L.R.A.(N.S.) 1093.

As to violation of police ordinance as to speed as ground for private action, see exhaustive note to *Sluder* v. *St. Louis Transit Co.* 5 L.R.A.(N.S.) 197, 218, 250.

D. C.]                              Syllabus.

4. Whether the evidence of pedestrians on a street, that they did not hear the motorman on a street railway car approaching a crossing sound his gong, is sufficient to warrant the inference that the gong was not sounded, is a question for the jury.

5. A police regulation providing that street cars shall have the right of way upon their tracks, amounts to nothing more than a declaration of a generally recognized rule of law. (Following *Conger* v. *Baltimore & O. R. Co.* 31 App. D. C. 139.)

6. The precedence accorded to street railroad cars in crossing the city streets is more limited than that accorded steam railroad trains at crossings and is to be exercised with corresponding care. (Following *Eckington & S. H. R. Co.* v. *Hunter, supra; Metropolitan R. Co.* v. *Hammett,* 13 App. D. C. 370; *Metropolitan R. Co. v. Blick, supra.*)

7. The rule that it is the duty of one approaching a railroad crossing to stop, look, and listen is not applicable, in a strict sense, to street railroad crossings. (Following *Capital Traction Co.* v. *Lusby,* 12 App. D. C. 295.)

8. A person driving a wagon along a city street, and who sees a street car approaching a street crossing, has the right to assume that the car is moving within the speed limit prescribed by the police regulations, and that it will observe those regulations in respect to reducing the speed at the crossing and to sounding a warning gong if it is not intended to stop.

9. Where the driver of a horse attached to a wagon was injured by a street railroad car colliding at a street crossing with the wagon, and, in a suit by the driver against the street railroad company, the testimony tended to show that the car was going at a speed in excess of that allowed by the police regulations, and that the motorman failed, as required by such regulations, to sound his gong on approaching the crossing, and that a few moments before the collision, when a pedestrian called to the motorman, directing his attention to the situation of the plaintiff, the motorman was wiping his mouth with a handkerchief in his right hand,—it was *held* that the question of the defendant's negligence and the plaintiff's contributory negligence were for the jury, and that the trial court properly refused to direct a verdict for the defendant. (Following *Metropolitan R. Co.* v. *Blick, supra.*)

No. 1945. Submitted December 9, 1908. Decided March 2, 1909.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict in an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Clarence M. Cooper brought this action against the City & Suburban Railway to recover damages for injuries received through the negligence of the defendant, and recovered a judgment for $320, from which the defendant has appealed.

Plaintiff testified that about 12 o'clock on May 7, 1907, he was driving a bread wagon south in Tenth Street, N. E. That he first noticed defendant's car just as his horse reached the street car track running along D street. That the car was going west, and was about 50 feet east of the corner. That plaintiff's horse was moving in a walk. He looked out and saw a man crossing the track in the direction of the corner, where the car usually stopped to take on passengers. That he supposed the car was going to stop, and, hearing no bell to indicate the contrary, continued his way. The car did not stop, but struck his wagon, upsetting the same and breaking plaintiff's leg. On cross-examination he said that he had been driving on that route several times a day for two weeks before the accident, and knew the track was in D street. That he did not know how far you could see a car. That there is a grade there. That the car was about 50 feet from the corner, and the man was crossing about 15 or 20 feet from the wagon, going north. That when plaintiff first saw the man he was acting as if he were going towards the corner. That the reason he supposed the car was going to stop was that it was the usual stopping corner, he heard no bell, and the man was going in that direction. That he drove on without waiting to see the car stop, and his front wheels were across the track when the wagon was struck. That he did not look to see if the car was slowing down or not; could not say what its speed was. That he did not know anything was going to happen before he was struck. That he did not listen for the bell after he had first seen the car, because he supposed it had stopped. That he had good sight and hearing.

Edward A. Sullivan, for plaintiff, testified substantially as follows: He was crossing the track at the time of the accident,

going north.   Was standing in the middle of the street, and.
saw that the car and wagon were getting too close together.
Knew something was going to happen.   Held up his hand and
holloed to the motorman.   The motorman was wiping his mouth
with a handkerchief in his right hand, and did not notice at all
until he got to the curb.   The motorman may have had his left
hand on the controller, but did not have the other on the brake,.
for he was wiping his mouth with it.   As soon as he saw wit-
ness, he "went right after it, but he was right at the curb then."
The motorman was about 50 feet away when witness first no-
ticed him.   "The car was going down there pretty lively, he
supposes above 12 miles an hour."   There was a heavy down-
grade between Fifth and Eleventh streets.   Witness was stand-
ing in the middle of the track, not over 5 or 6 feet from the
curb line of Tenth street, and "just jumped off when the car
passed him."   After the accident, witness ran around to the
rear of the car, and "helped to get the horse unhitched and
the wagon up."   "The collision carried the wagon perhaps 10.
feet, and maybe further; the horse did not go anywhere, he
just kind of turned about with his head in the opposite direc-
tion,—stood on his feet."   On cross-examination he said that
he was going home, had no intention of boarding the car, and
gave it no signal to stop until he saw the accident was going
to happen.   When he first saw the car the wagon was just
about entering the track, and the car was coming down with
such speed that he thought it could not stop in time.   Holloed
to both parties.   Was noticing the car more than the wagon.
When he first saw the car it was about 50 feet away in one
direction, and the wagon some 10 or 12 feet away.   Threw up
his hand when the car was 16 or 18 feet from him.   It did not.
commence to stop until after witness jumped from the track.
"The car was just close enough for witness to jump off the track
before it passed."   He did not notice particularly how far the
car was away when he threw up his hand.   It did not com-
mence to stop until after he jumped off the track.   On redirect
examination he said the car was 50 feet from him before he got
on the track.   He walked on to the track, threw up his hands,.

holloed, and then got out of the way. "Could not see whether the motorman was 18, or 20, or 30 feet from him when he threw up his hand." The wagon was just about going on the track; when the car got there the hind wheels were about on the track and the front wheels on the other one.

Plaintiff offered in evidence the police regulations, which provide that no car shall move at a greater speed than 12 miles an hour in the city, or at a speed greater than 6 miles an hour at street crossings; that street cars shall have the right of way upon their tracks, except as to vehicles of the fire, water and health departments and hospital ambulances; and that they shall strike a gong at every street crossing.

Some other evidence was introduced relating to the character of plaintiff's injury,—a fractured ankle,—and the results of the same.

At the conclusion of this evidence the defendant moved the court to direct a verdict on its behalf, which was denied. No testimony was offered on behalf of the defendant.

The charge of the court carefully instructed the jury as regards the negligence of the defendant and the contributory negligence of the plaintiff, and no exception was taken thereto.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan* for the appellant.

*Mr. James E. Padgett* and *Mr. Edwin Forrest* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The error assigned on the refusal of the court to direct a verdict for the defendant, upon the conclusion of plaintiff's evidence, is the foundation of two contentions: (1) That the evidence was not sufficient, as matter of law, to show that the defendant was guilty of any negligence which operated in producing the collision with plaintiff's wagon; (2) that it plainly

shows that it was occasioned or contributed to by the plaintiff's own negligence.

On such a motion, every fact offered in evidence by the plaintiff must be accepted as true, together with every reasonable inference deducible therefrom. And the motion can only be granted when but one conclusion therefrom can be reached by all fairminded men, and that conclusion is utterly opposed to the plaintiff's right to recover in the case.

The sufficiency of the evidence is to be tested by the application of this well-settled principle.

As regards the question of defendant's negligence, it is to be borne in mind that the police regulations limit the speed of street cars between crossings to 12 miles an hour, and require this to be reduced to 6 miles per hour at street crossings. They require also that a gong shall be sounded on the car before crossing a street. Aside from the question of plaintiff's contributory negligence, hereafter considered, if the failure to observe both or either of those requirements was a proximate cause of the collision, or had a direct and appreciable part therein, their omission constituted negligence. *Clements* v. *Potomac Electric Power Co.* 26 App. D. C. 482, 500, and cases there cited. The evidence showed that the car was coming down a grade some four or five blocks long. In the opinion of the witness who testified to it, the car was moving faster than 12 miles an hour before it reached the intersecting street. This evidence was competent, and was not objected to. Though it may be entitled to little weight, its value was for the determination of the jury. *Eckington & S. H. R. Co.* v. *Hunter,* 6 App. D. C. 287, 308; *Metropolitan R. Co.* v. *Blick,* 22 App. D. C. 194, 213.

Whether the evidence of the witnesses that they heard no gong sound at the approach to the crossing was sufficient, under the circumstances, to warrant the inference that the gong had not been sounded, was likewise a question for the jury. Moreover, the witness testified that he called to the motorman as he approached Tenth street, and undertook to direct his attention to the situation of the plaintiff, who was then crossing the track;

that the motorman was using, for another purpose, the hand with which the brake was to be applied; that he apparently did not take notice of witness' warning until at the curb line,. for not until then did he apply his brake.   This evidence had bearing both on the speed of the car and its negligent management, and its value was for the jury also.

We find no error, therefore, in the submission of the question of defendant's negligence to the jury.

The chief point of contention is the contributory negligence of the plaintiff.   If it appears from the evidence, with the certainty before indicated, that the injury was caused or directly contributed to by the plaintiff's own neglect of ordinary care under all of the circumstances, then the motion should have been granted, even though the defendant may have also been guilty of negligence.

Whether the District commissioners· in making regulations for street car management were also invested with the power to determine the right of way, or precedence, as between cars and private vehicles, at street crossings, we need not pause to determine.   Assuming that they were, the regulation heretofore recited would seem to amount to nothing more than the declaration of a generally recognized rule of law.   *Continental Improv. Co.* v. *Stead,* 95 U. S. 161, 165, 24 L. ed. 403, 405;. *Conger* v. *Baltimore & O. R. Co.* 31 App. D. C. 139, 148.   In the first of those cases it was said: "For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties.   The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision.   It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach.   The duty of the wagon to yield precedence is based upon this condition.   Both parties are charged with the mutual duty of keeping a careful lookout for danger.   *   *   *   The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the

·matter.  *  *  *  The people have the same right to travel
on the ordinary highways as the railway companies have to run
trains on the railroads."

For obvious reasons, the precedence accorded to street cars
in crossing city streets is more limited, and to be exercised
with corresponding care. *Eckington & S. H. R. Co.* v. *Hunter,*
6 App. D. C. 287, 310; *Metropolitan R. Co.* v. *Hammett,* 13
App. D. C. 370, 378; *Metropolitan R. Co.* v. *Blick,* 22 App.
D. C. 194, 214.

The conditions under which street cars are operated are quite
different from those surrounding steam railways at ordinary
highway crossings. They run in all directions for local ac-
commodation, crossing crowded streets at short intervals. They
stop at all crossings when necessary to take on or discharge
passengers, and their managers know that the cross streets are
in constant use by other vehicles of all kinds. Their speed is
confined within reasonable limits, and their movements are
more easily and promptly controlled than those of steam rail-
ways. For these reasons, and others that the conditions under
which they operate readily suggest, the duty of stopping to look
and listen, of general application in cases of steam railway
crossings, cannot be applied, in a strict sense, to street railway
crossings. *Capital Traction Co.* v. *Lusby,* 12 App. D. C. 295,
302.

Moreover, the plaintiff had the right to assume, when he saw
the car coming down the street above the crossing, that it was
moving within the prescribed speed limit, and that it would
observe the regulations in respect of reducing that speed at
the crossing, and of sounding the warning gong if not intended
to stop at the corner. *Chunn* v. *City & Suburban R. Co.* 207
U. S. 302, 309, 52 L. ed. 219, 222, 28 Sup. Ct. Rep. 63.

Under all the circumstances we do not think the court was
bound to hold that the plaintiff was guilty of contributory neg-
ligence, and therefore take the case from the jury. As was
said by this court in a somewhat similar case: "There might
have been mistake, or miscalculation, or inattention on the part
of the plaintiff, but certainly there was no such clear case of

negligence as that all sensible men could take but one view of it." *Metropolitan R. Co.* v. *Blick, supra.*

It follows that there was no error in refusing to direct a verdict for the defendant, an dthe judgment must be affirmed, with costs.                                    *Affirmed.*